1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

7
8
9
10
11
12

|  |  |
|---|---|
| **United States of America,**<br>Plaintiff/Respondent<br>-vs-<br>**Ruben Plaza-Uzeta,**<br>Defendant/Movant | CV-09-1231-PHX-GMS (JRI)<br>CR-05-0225-PHX-GMS<br><br>**ORDER**<br>**&**<br>**REPORT & RECOMMENDATION**<br>**On Motion to Vacate, Set Aside, or**<br>**Correct Sentence Pursuant to**<br>**28 U.S.C. § 2255** |

13

## I. MATTER UNDER CONSIDERATION

14
15
16
17
18
19

Movant, following his conviction in the United States District Court for the District of Arizona, filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on June 8, 2009 (Doc. 1).  On November 27, 2009 Respondent filed its Response (Doc. 16).   Movant filed a Reply on December 18, 2009 (Doc. 18).  In the meantime, Movant has filed a Motion for Discovery (Doc. 3) and a Motion for Evidentiary Hearing (Doc. 20).

20
21
22
23

The Movant's Motion is now ripe for consideration.  Accordingly, the undersigned makes the following orders, and proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

24
25

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

26

## A. FACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

27

Movant was indicted and ultimately arrested in connection with a large scale alien

28

smuggling operation.  (CR Doc. 1, Indictment, Doc. 17, Return of Bench Warrant.)[1]  Trial counsel Williams was appointed to represent Movant.  (CR Doc. 18, M.E. 5/11/05.)

Movant was offered plea agreements providing for sentencing ranges as low as 7 to 15 years in prison.  (CR Doc. 142, R.T. 10/6/06 at 13-14.)

On September 10, 2006, some 16 months after appointment of trial counsel and just one month prior to trial, Movant filed through counsel a Motion for New Counsel (CR Doc. 67), and directly submitted to the Court a now lost letter seeking new counsel.  The motion was denied for failing to state a basis for relief.  (CR Doc. 73, Order 9/15/06.)

Movant then filed, through counsel, a Motion to Proceed *Pro Per* (CR Doc. 76).  At the hearing on the motion, the Court granted the request, and appointed trial counsel as advisory counsel.  However, after the Court denied Movant's request to be transferred to a different jail with better library access, Movant withdrew his motion, and the order granting the motion was vacated.  (*See generally* CR Doc. 142, R.T. 10/6/06.)

Movant proceeded to trial on October 11, 2006 (CR Doc. 99, M.E. 10/11/06), and was ultimately convicted of: (1) Conspiracy to Commit Hostage Taking; (2) Hostage Taking and Aid and Abet; (3)  Conspiracy to Harbor Illegal Alien; (4) Harboring Illegal Aliens; and (5) Possession or Use of a Firearm in a Crime of Violence.  (CR Doc. 179, Judgment.)

Following the guilty verdicts, on October 24, 2006, Movant again moved to proceed *pro per*.  (CR Doc. 118)  Counsel also moved to withdraw.  Those requests were granted on November 11, 2006, and Movant proceeded to sentencing *pro se*. (CR Doc. 122, Order 11/16/06.)  Attorney Baggot was appointed as advisory counsel on December 1, 2006.  (CR Doc. 128, M.E. 12/1/06.)

Movant was sentenced on March 12, 2007 to concurrent sentences of life in prison (on counts 1 and 2), 120 months (on counts 3 and 4), and a consecutive term of 84 months on Count 5.  (*Id.*)

---

[1]  The docket in the underlying criminal case, CR-05-0225-PHX-GMS, is referenced herein as "CR Doc. ___."

**B.  PROCEEDINGS ON DIRECT APPEAL**

Movant filed, through counsel, a direct appeal challenging: (1) the denial of his request for new counsel; (2) the denial of a request to transfer him to a jail with better access to library materials; (3)  the grant of his request to represent himself without a voluntariness colloquy; (4) his punishment on a substantive crime and a related conspiracy, on double jeopardy grounds; and (5) the court's implicit finding at sentencing that Movant was a leader or organizer and there were 56 victims.  In a Memorandum Decision filed June 10, 2008, the Ninth Circuit rejected all Movant's claims, and affirmed.  (CR Doc. 223, Mem. Dec.)  They noted that the record was not sufficiently developed for them to consider Movant's claims of ineffective assistance, and made their ruling without prejudice to such claims being asserted on collateral review.  (*Id.* at 3, n. 1.)

Movant filed a Petition for Writ of Certiorari, which was denied.  (Motion, Doc. 1, Attachment B.)

**C.  PRESENT MOTION TO VACATE**

**Motion** - Movant commenced the current case by filing Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on June 8, 2009  (Doc. 1). Movant raises six grounds for relief in the Motion:

(1)    The trial court erred in denying Movant's request for appointment of new trial counsel;

(2)    Movant's trial counsel was ineffective because counsel failed to communicate with Movant, failed to interview and call various witnesses, and attempted to coerce Movant into accepting a plea agreement;

(3)    Movant's trial counsel was ineffective because counsel failed to object to the jury selection process;

(4)    Movant's Fifth and Fourteenth Amendment rights were violated when the Government permitted one of its witnesses to repeatedly lie while testifying;

(5)    Movant's Fifth and Sixth Amendment rights were violated when he was

1    denied the assistance of a qualified interpreter; and

2    (6)    Movant's appellate counsel was ineffective.

3    **Response** - On November 27, 2009, Respondent filed its Response (Doc. 16), arguing

4    that Grounds 4 and 5 were procedurally defaulted by failure to raise them on direct appeal,

5    and Grounds 1, 2, 3, and 6 are without merit.

6    **Reply** - Movant filed his Reply on December 18, 2009 (Doc. 18).  With regard to

7    procedural default, Movant argues that any procedural default should be excused because of

8    his actual innocence, the cause and prejudice standard does not apply in § 2255 cases, and

9    he has shown "cause" because his appellate counsel was ineffective.  Movant also argues that

10   Ground Five required further factual development, and therefore could not be raised on direct

11   appeal.  He argues that Ground Six affected his right to counsel, and therefore remains

12   available for presentation in this case.  Movant replies on the merits of the remaining

13   grounds.

14

15   **D.  MOTION FOR DISCOVERY**

16   At the time of filing his Motion to Vacate, Movant also filed a Motion for Discovery

17   and Expansion of the Record (Doc. 3), seeking the production of six sets of various records.

18   Respondent argues that the requests are merely fishing expeditions (Doc. 17). Movant replies

19   (Doc. 19) that the requests are limited to specific items and are necessary to establish the

20   factual support for his grounds for relief.

21

22   **E.  MOTION FOR EVIDENTIARY HEARING**

23   At the time of his Reply, Movant also filed a Motion for An Evidentiary Hearing

24   (Doc. 20).  Respondent has not responded to the motion.

25

26   **III. APPLICATION OF LAW TO FACTS**

27   **A.  MOTIONS FOR DISCOVERY AND EVIDENTIARY HEARING**

28   Movant filed with his Motion to Vacate, a Motion for Discovery and Expansion of the

Record (Doc. 3).  Movant seeks discovery of the following:

    (1)    For Ground One:  The lost letter sent to the trial court on September 9, 2006, requesting substitution of counsel, to support Movant's claim that the trial court was on notice of an irreconcilable conflict between Movant and trial counsel.

    (2)    For Ground Two: Jail and detention center visitation records, and surveillance tapes of visitation rooms and the court's attorney/client conference rooms, to establish the lack of contact with counsel prior to trial.

    (3)    For Ground Four: Surveillance tapes for the trial court's witness recess room for the fourth day of trial, to show the prosecutor instructed a prosecution witness to lie..

    (4)    For Ground Four:  Depositions (or interviews) of prosecution witnesses to explain inconsistent statements.

    (5)    For Ground Two:  Affidavits of interpreters utilized by counsel to establish that Movant asked counsel to call various witnesses.

    (6)    For Ground Three:   JS-12 Reports, master jury wheel, etc. concerning Movant's grand and petit jury to establish Movant's fair cross-section claim.

In § 2255 cases, "A party may invoke the processes of discovery . . . if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Rule 6 (following s 2255); *see Argo v. United States*, 473 F.2d 1315, 1317 (9th Cir.), *cert. denied*, 412 U.S. 906 (1973).  In exercising that discretion, habeas courts are cautioned that they "should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation." *Calderon v. U.S. Dist. Court for the Northern Dist. of California,* 98 F.3d 1102, 1106 (9th Cir. 1996).  "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Bramley,* 520 U.S. 899, 904 (1997).  "But where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of

1    the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris*

2    *v. Nelson,* 394 U.S. 286, 300 (1969).

3         In addition, Movant seeks an evidentiary hearing to support his claims.  "To earn the

4    right to a hearing...[a 2255 movant must] allege specific facts which, if true, would entitle

5    him to relief."  *U.S. v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996).  The Ninth Circuit has

6    recognized that even when credibility is at issue, no evidentiary hearing is required if it can

7    be " 'conclusively decided on the basis of documentary testimony and evidence in the record.'

8    " *Shah v. U.S.*, 878 F.2d, 1156, 1159 (9th Cir. 1989) (quoting *United States v. Espinoza*, 866

9    F.2d 1067, 1069 (9th Cir.1989)).  The court may deny a hearing if the movant's allegations,

10   viewed against the record, fail to state a claim for relief or "are so palpably incredible or

11   patently frivolous as to warrant summary dismissal." *United States v. Mejia-Mesa*, 153 F.3d

12   925, 931 (9th Cir.1998).

13        Because the resolution of these requests is intertwined with the consideration of he

14   merits of the Petition, the undersigned will address these requests in connection with each

15   separate ground for relief.

16

17   **B.  GROUNDS 4 & 5:  PROCEDURAL DEFAULT**

18        Respondents argue that Grounds 4 (false testimony) and 5 (interpreter) are

19   procedurally defaulted because Movant failed to raise them on direct appeal.

20        **Procedural Default** - Ordinarily a § 2255 movant raising a claim for the first time in

21   post-conviction proceedings is in procedural default, and is precluded from asserting the

22   claim.  *Bousley v. United States*, 523 U.S. 614, 621(1998)(finding default where petitioner

23   challenging his guilty plea did not raise *Bailey* claim in direct appeal).

24        Movant argues that in the absence of a violation of some rule explicitly requiring

25   presentation of a claim on appeal, the procedural default and "cause and prejudice" standards

26   do not apply in § 2255 proceedings, citing *English v. United States*, 42 F.3d 473,477 (9th Cir.

27   1994).  There, the Ninth Circuit refused to find a procedural default absent a showing that

28   the movant had "deliberately bypassed" a chance to appeal a claim.  However, as noted in

*U.S. v. Braswell*, 501 F.3d 1147, 1150, n.1 (9th Cir. 2007), *English* was based upon the state of the law in 1989, and *Bousley* reflects "the current state of the law: most claims are procedurally defaulted by both federal and state prisoners in habeas proceedings when not raised on direct appeal, absent a showing of cause and prejudice or actual innocence."[2]

**Ineffective Assistance Exception** - Movant argues that Ground Five (lack of interpreter) affected his right to counsel, and therefore remains available for presentation in this case.  Claims of ineffective assistance of counsel in a federal prosecution need not be exhausted on direct appeal, but are properly brought in the first instance in a Motion pursuant to 28 U.S.C. § 2255.  "We do hold that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).  However, this exception for ineffective assistance claims is a narrow one.  The mere fact that the claim might effect a right to counsel does not render it unaffected by the exhaustion requirement.  Movant's Ground Six does not raise a claim of ineffective assistance based on lack of an interpreter, but directly attacks the lack.  Thus it should have been raised on direct appeal and is procedurally defaulted.

**Inability to Present on Direct Appeal** - Movant also argues that Ground Four (false testimony) required further factual development, and therefore could not be raised on direct appeal. In *Bousley*, the Court noted that in *Waley v. Johnston*, 441 U.S. 780 (1942) the Court recognized "an exception to the procedural default rule for claims that could not be presented without further factual development."[3]  Movant argues he could not have presented his Ground Four without the benefit of surveillance tapes.  (Reply, Doc. 18 at 3.)  In his Motion for Discovery, he clarifies that he refers to surveillance tapes of the trial courts' room for

---

[2] The "deliberate bypass" rule on which *English* was based has since been explicitly abrogated with respect to state habeas petitioners. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[3] Arguably, this "exception" is simply a species of "cause" where "the factual or legal basis for a claim was not reasonably available to counsel." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (identifying matters which would establish "cause").

1    witnesses during a recess.  (Motion, Doc. 3 at 4.)

2         In support of his request, Movant points only to the fact that the witness' testimony

3    conflicted with itself, and changed over time, before and during trial.  Movant asks the Court

4    to make a long series of assumptions, including: (1) a surveillance tape of the witness during

5    the recess was made; (2) that it still exists; (3) that it would show the prosecutor

6    communicating with the witness; (4) that it would show that those communications included

7    the prosecutor inducing the witness to change her testimony; and (5) that the change was to

8    a false statement.  It is the latter presumption that makes the whole affair pointless. Movant

9    proffers nothing to establish that the witness' testimony after the recess was false, as opposed

10   to her testimony prior.

11        Moreover, the surveillance tape was not necessary to show the inconsistencies on

12   appeal.  Movant's attack on the witness' testimony concerns four areas.  The first relates to

13   the witness' purported use of the Western Union money service from Mexico to the U.S.,

14   which service Movant contends was not available from Western Union at the time.  Those

15   facts would have been available without the video tape.  The second concerns the witness'

16   ability to overhear a conversation by Movant in "room no: 9", when the witness had earlier

17   testified she had not been in that room until a later date.  This inconsistency was on the

18   record, and Movant proffers nothing to show the latter testimony was false.  The third relates

19   to whether the witness had actually overheard the conversation.  She testified before a break

20   in the trial that she had heard nothing, and then after the break she testified to the substance

21   of the conversation.  Again, this was on the record, and no showing of falsity is made.  The

22   fourth relates to the witness' initial failure to identify Movant in a photo lineup, and then her

23   ability to do so three years later, just before trial.  Those facts would have been otherwise

24   available (e.g. in the investigative reports), and the surveillance tape would not have shown

25   an impact on this change in the witness' testimony.

26        In sum, Movant fails to show that his current request for the surveillance tape or any

27   other evidence outside the records was a prerequisite to presenting his procedurally defaulted

28   claims on direct appeal.

Based on the foregoing, the undersigned concludes that Movant's grounds 4 and 5 were procedurally defaulted by failing to present them on direct appeal.

**Cause and Prejudice** - To overcome such procedural defaults, Movant would have to show either (1) "cause" and actual "prejudice" to explain the default, or (2) that he was "actually innocent" of the crime for which he was indicted. *Bousley*, 523 U.S. at 622.

Movant asserts that the ineffectiveness of appellate counsel establishes cause. Ineffective assistance of appellate counsel in raising claims may constitute cause for failing to properly exhaust claims and excuse procedural default. *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998). Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, Movant must show: (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88. Although the Movant must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

"In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Such a decision would ordinarily be a tactical decision and tactical decisions with which a defendant disagrees cannot form the basis for a claim of ineffective assistance of counsel. *Morris v. California*, 966 F.2d 448, 456 (9th Cir. 1991).

Ground Four - With regard to Ground Four (False Testimony), Movant proffers nothing to show that appellate counsel had available anything to show that the inconsistencies in the witness' testimony were anything more than inconsistencies. A witness has committed perjury only "if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion,

mistake, or faulty memory." *U.S. v. Dunnigan*, 507 U.S. 87, 94 (1993) (analyzing federal criminal perjury statute).   Moreover, a claim of prosecutorial misconduct is not made out where discrepancies in the testimony about various details "could as easily flow from errors in recollection as from lies," and there "is no evidence whatsoever for prosecutorial misconduct except for the inference from discrepancies." *U.S. v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995).   Movant proffers nothing more than such inferences, and speculation. Thus, a decision by appellate counsel to forego making such a claim could have been a reasonable tactical decision, and would not have been ineffective assistance.

Ground Five - With regard to Ground Five (Interpreter), Movant simply alleges that "during severals consultation with its counsel" there was no interpreter. (Motion, Doc. 1 at 8E. *See also id.* at 6B ("She would even visited me without the assistance of an interpreter, some times, even though she new very well that I, the defendant, did not speak Inglish nor she speak any Spanish).)  In his brief, he describes these as two occasions at the jail, and one in the Court's holding cell.  (Brief, Doc. 1 at 24-25.)  In contrast, Respondent presents an affidavit of trial counsel avowing that "[o]n each and every occasion that I met with Mr. Plaza-Uzeta I used the services of a Spanish Language Speaking Interpreter."  (Response, Doc. 16, Attachment at ¶ 11.)  Thus, at best, appellate counsel would have been faced with arguing a conflicting set of facts as to whether an interpreter was present.

Further, Movant proffers nothing to show that, assuming such unassisted visits occurred, that they negatively impacted his representation at trial. To be sure, Movant argues that these event occurred at "very crucial times" close to trial. (Brief, Doc. 1 at 25) But he makes specific reference only to his attempts at self-representation.  Any harm from such actions would have been resolved when counsel was re-appointed.  He also asserts that he "ended up in trial with no defense at all, not because it was not available, but because of lack of communication with its counsel."  (Reply, Doc. 18 at 3.)  However, Movant does not suggest what additional defense could have been presented, nor why these few unassisted

1   visits precluded the presentation of such defenses.[4]

2   Without any harmful impacts to the trial, appellate counsel would not be able to

3   establish that trial counsel was rendered ineffective, or that the lack of an interpreter was

4   otherwise harmful.

5   The lack of an interpreter in the courtroom impacts a variety of other concerns, e.g.

6   a defendant's right to cross examine witnesses, to testify, to be present, etc.  With one

7   exception, Movant does not suggest, however, that an interpreter was not present in the

8   courtroom.   Movant does argue that at one hearing in October, 2006, the interpreter failed

9   to utilize headphones, making it difficult to hear and understand.  (Brief, Doc. 1 at 25-26.)

10  Again, however, as shown by the referenced transcript attached as Exhibit 5 to the Motion,

11  this hearing concerned Movant's attempts at self-representation.  Any harm from confusion

12  at such proceedings would have been cured by counsel's continuing representation.

13  Accordingly, the undersigned concludes that Movant has failed to establish ineffective

14  assistance of appellate counsel in failing to present Ground Five.

15  <u>Summary re Cause and Prejudice</u> - Based upon the foregoing, Movant has failed to

16  establish "cause" to excuse his procedural defaults.

17  **Actual Innocence** - Movant also argues that his procedural defaults should be

18  excused because of his actual innocence.

19  ... in an extraordinary case, where a constitutional violation has
    probably resulted in the conviction of one who is actually innocent, a

20  federal habeas court may grant the writ even in the absence of showing
    cause for the procedural default.

21
22  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  A movant asserting his actual innocence of

23  the underlying crime must show "it is more likely than not that no reasonable juror would

24  have convicted him in the light of the new evidence" presented in his habeas petition. *Schlup*

25  *v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of

26

27      [4]  Movant does argue that trial counsel failed to call various witnesses proposed by
28  Movant.  However, he also argues that the interpreters were present for these conversations
    concerning these witnesses.  (Motion for Discovery, Doc. 3 at 5.)

- 11 -

1  the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror

2  would have found the defendant guilty.  Id. at 329.  This standard is referred to as the "*Schlup*

3  gateway." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

4       Here, Movant proffers little new evidence to establish his actual innocence. He attacks

5  various procedural aspects of his trial and representation, and points to inconsistencies in one

6  witness's testimony.  Apart from that, he submits two affidavits.  The first, of a Mr. Favian

7  Franco (Motion, #1 at Exhibit 6), who simply avows that Movant is innocent.  It provides no

8  basis for the witness' knowledge or conclusions.  The second, of Jaime Cisneros Ruiz,

9  reflects the witness' presence at the house, and claims that Movant was at the house for 15

10  to 20 minutes on one occasion, but hadn't previously known where the house was.  The

11  witness concludes that Movant was not involved in the conspiracy (*Id.*).

12       In contrast, Movant had not only been identified as being present at the drop house

13  where the aliens had been detained, and present while at least one alien was beaten, but upon

14  his arrest Movant identified 27 other individuals involved in the alien smuggling operation,

15  described the operation, and admitted to past involvement in alien smuggling. (CR Doc. 209,

16  R.T. 10/18/06 at 69-73.)

17       Comparing the evidence at trial with what Movant now proffers, Movant comes

18  nowhere near establishing that no reasonable juror could have found him guilty of his

19  involvement in the alien smuggling based on his "new evidence."

20       In his Ground 6, Movant also argues that appellate counsel was ineffective for failing

21  to challenge the insufficient evidence on various offenses.  However, a finding of "actual

22  innocence" is not to be based upon a finding that insufficient evidence to support the charge

23  was presented at trial, but rather upon affirmative evidence of innocence.  *See U.S. v.*

24  *Ratigan*, 351 F.3d 957 (9th Cir. 2003) (lack of proof of FDIC insurance in a  bank robbery

25  case, without evidence that insurance did not exist, not sufficient to establish actual

26  innocence).

27       Accordingly, the undersigned finds that Movant has failed to make a showing of his

28  actual innocence sufficient to avoid the effect of his procedural defaults.

1    Therefore, Movant's Grounds Four (Interpreter) and Five (False Testimony) should

2    be dismissed with prejudice as procedurally defaulted.

3

4    **C.  GROUND ONE: LACK OF HEARING ON CONFLICT WITH COUNSEL**

5    In his Ground One for relief, Movant argues that his sixth amendment right to counsel

6    was denied when the trial court denied his request for new counsel without conducting a

7    hearing.  (Motion, Doc. 1 at 5A-5B.)   Movant argues that there was a "breakdown in

8    communication" and that he was dissatisfied with counsel' performance.  (Motion, Doc. 1,

9    Memorandum at 9-10.)  Movant does not elaborate on either of these issues, but simply

10   points to his subsequent efforts to proceed *pro se* as evidence of how difficult things were.

11   In *U.S. v. Adelzo-Gonzalez*, the Ninth Circuit found an abuse of discretion in denying

12   a motion to substitute counsel founded upon an irreconcilable conflict, based upon the district

13   court's failure to conduct an adequate inquiry into the conflict.  268 F.3d 772, 777-778 (9th

14   Cir. 2001).    Respondent argues that Movant fails to establish that the trial court was put on

15   notice that there was an irreconcilable conflict or breakdown in communication with counsel,

16   and that the Court explicitly denied his request based on the lack of any basis for substitution.

17   (Response, Doc. 16 at 7-8.)    Movant argues that in a lost letter to the trial court he

18   complained of "too much lack of communication," and did not believe it procedurally proper

19   to reassert the claim at the time he sought to proceed *pro se*.  (Reply, Doc. 18 at 3-6.)

20   The Ninth Circuit declined to grant relief on this claim, based upon the lack of a

21   record to support Movant's assertions that there was "a conflict severe enough to justify

22   appointment of substitute counsel."  (CR Doc. 223, Mem. Dec. at 2.) "Absent any evidence

23   that the defendant made some claim of conflict, we cannot conclude that the district court

24   was required to conduct any further inquiry."  (*Id.* at 3.)  The court went on, however, to

25   clarify that its decision "is without prejudice to renewing that claim on collateral review."

26   (*Id.* at 3, n. 1.)

27   **Need for Discovery/Evidentiary Hearing** - At the outset, the undersigned notes that

28   Movant does not suggest that an evidentiary hearing will produce any particular evidence to

1    corroborate his claim that he put the trial court on notice of an irreconcilable conflict.  He

2    does seek discovery of the lost letter, insisting it must be "within this Court's file and/or

3    Docket Sheet." (Doc. 3, Motion for Discovery, at 1.) It is not, and Movant does not suggest

4    how else it might be located or presented at an evidentiary hearing.  The undersigned also

5    notes that the Ninth Circuit decried the lack of a record and the trial court's failure to inquire

6    "into Plaza's relationship with his attorney." (CR 223, Mem. Dec. at 2.)  However, they

7    declined to find that on the record available "the district court was required to conduct any

8    further inquiry." (*Id.* at 3.) Thus, it remains to this Court to resolve whether evidence exists

9    to find such a requirement.

10        No evidentiary hearing has been conducted on the issue.  However, the court may

11   deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for

12   relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal."

13   *United States v. Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir.1998). For the following reasons,

14   the undersigned finds palpably incredible Movant's assertion that the lost letter related an

15   irreconcilable conflict.

16        **First**, the Motion for Appointment of New Counsel (CR Doc. 67) filed by trial

17   counsel simply related that Movant "did not share with counsel the reason for his request."

18   The Court's Order noted that "Defendant Plaza has submitted a letter requesting that a new

19   counsel be appointed.  Neither the Motion nor the defendant's letter has presented an

20   appropriate basis for granting of said Motion." (CR Doc. 73, Order 9/15/06.) The language

21   of the Court's Order reflects that the letter, like the motion, simply provided no basis for the

22   request.

23        **Second**, Movant then directed trial counsel to file a "Motion for Defendant to Proceed

24   *Pro Per*" (CR Doc. 76), which again failed to reference any irreconcilable conflict, or any

25   other reason for the request.  Indeed, at the hearing on that motion, the trial judge again

26   highlighted the lack of any reason being provided for the substitution or for proceeding *pro*

27   *per*:

28             And no one needs to be a close friend, or even any kind of a

- 14 -

friend of their lawyer. That's not part of the relationship. It isn't necessary. You don't have to -- you don't have to have a cordial relationship with the lawyer. But the problem is there has been no reason asserted why this lawyer has not been presenting you with a capable and able defense, and accordingly there's no reason for the Court to change that representation.

(CR Doc. 142, R.T.  10/6/06 at 20.)

**Third**, Movant still fails to relate any circumstances which would evidence that an irreconcilable conflict actually existed at the time of his motion.  Indeed, he simply complains that the trial court "just ignored Petitioner complain about lack of communication, and counsel performance." (Motion, Doc. 1, Memorandum at 13.)  To be sure, Movant was apparently not happy with how the case and representation was proceeding.  Indeed, in seeking to withdraw as advisory counsel, trial counsel related that "he and I have had some difficulties in the representation." (CR Doc. 142, R.T. 10/6/06 at 13.)

However, the Sixth Amendment does not guarantee a "meaningful relationship" between a client and his attorney. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).  "[N]ot every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights." *Schell v. Weitek,* 218 F.3d 1017, 1027 (9th Cir. 2000).  In *Morris*, the defendant was convinced that newly appointed counsel had not had enough time to prepare for trial, and was disconcerted by counsel's assessment that there was no defense to the charges.  *See Frazer v. U.S.*, 18 F.3d 778, 783 (9th Cir. 1994) (analyzing and distinguishing *Morris*).  The Supreme Court found this dissatisfaction did not establish an irreconcilable conflict and did not implicate the right to counsel.

Movant does complain that counsel had told him he was facing the death penalty, but advised him he was not after Movant rejected the various plea offers.  "Thus, petitioner make up his mind no to believe anything said by his counsel."  (Reply, Doc. 18 at 12.)  Movant provides a copy of a letter from trial counsel dated November 21, 2005,  referencing the potential for a death penalty. (Motion, Doc. 1 at Attachment C.) However, Movant does not suggest that he related these facts to the trial court.  Moreover, the settlement conferences and plea negotiations were continuing even after Movant's Motion for New Counsel was filed.

(*See* CR Doc. 69, M.E. 9/14/06 re Settlement Conference; CR Doc. 79, M.E. 10/3/06, setting change of plea hearing; CR Doc. 82, M.E. 10/4/6 re Settlement Conference.)   Thus, the rejection of the plea offers, subsequent revelation that the death penalty was not possible, and resulting breakdown in communications, would not have occurred until after the letter had been sent to the Court.

**Fourth**, Movant's *pro se* Motion to Proceed *Pro Per* (CR Doc. 118) was a single line request without any explanation of its reasoning. Thus, a similar approach by Movant in his letter to the Court would not be surprising.

**Fifth**, as noted by the Ninth Circuit, "Plaza had multiple opportunities to state the basis for his request" for substitute counsel, and failed to do so.  (CR Doc. 223, Mem. Dec. at 2.) He voiced no objection when trial counsel was appointed as his advisory counsel, *e.g.* by asking for another attorney to be appointed as such, or renewing his objection to trial counsel upon  her reappointment.  (*See* CR Doc. 142, R.T. 10/6/06 at 10-11, 20-21.)

The only other things which Movant proffers to suggest that the trial court was on notice of a claim of an irreconcilable conflict is his subsequent request to proceed without counsel.  The Ninth Circuit rejected this boot strap  argument.  "The fact that Plaza requested new counsel does not demonstrate adequate grounds for appointment of substitute counsel." (CR Doc. 223, Mem. Dec. at 2.).

**Summary re Evidentiary Hearing** - Based upon the foregoing, the undersigned finds Movant's claims that his letter put the Court on notice of an irreconcilable conflict to be so palpably incredible, and his proffer of evidence otherwise non-existent, that no evidentiary hearing is necessary to resolve the claim.

**<u>Merits</u>** - In sum, the undersigned is convinced that Movant utterly failed to put the trial court on notice that an irreconcilable conflict had arisen between he and counsel.  The trial court was left to surmise among any number of alternative explanations for Movant's efforts to replace trial counsel, including disputes over particular tactics, or even just a belief that other counsel might handle the case differently. Under those circumstances, there was no mandate that the trial court *sua sponte* conduct an inquiry into the attorney/client relationship.

## D.  GROUND TWO: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

For his Ground Two for relief, Movant asserts that trial counsel was ineffective because counsel: (1) failed to contact and interview potential witnesses; (2) failed to communicate with Movant; (3) and attempted to coerce Movant into taking a plea offer by incorrectly telling him he would receive the death penalty. (Motion, Doc. 1 at 6A-6D and Memorandum at 17-21.) These claims are evaluated under *Strickland*'s defective performance and prejudice standard discussed herein above.

**Potential Witnesses** - Movant contends that he told trial counsel of potential witnesses Rigoberto Trujillo, James Cisneros Ruiz, and Felix Najera Escobar but counsel failed to interview or call these witnesses.  (Motion, Doc. 1 at 6C.)

The undersigned notes that at the hearing on Movant's Motion to Proceed *Pro Per* that trial counsel asserted that Movant "has not indicated any witnesses that he wishes to call on his behalf." (CR Doc. 142, R.T. 10/6/06 at 11-12.)  Movant does argue that after the rejection of the plea bargain, counsel "requested for the second or third time" Movant's list of witnesses.  He asserts he gave her the names of the foregoing three witnesses.  (Motion, Doc. 1 at 6C.)  Movant seeks discovery in the form of affidavits (or depositions) of interpreters to establish that he requested counsel pursue these witnesses. (Motion for Discovery, Doc. 3 at 5.)  Because it does not alter the outcome, the undersigned assumes for  purposes of this Report & Recommendation that Movant asked counsel to call these witnesses.  Consequently, discovery in that regard is unnecessary.

A failure to investigate a meritorious defense may constitute ineffective assistance of counsel.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).   "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 691.

However, a movant may not leave a court to speculate what evidence the deficient investigation would have discovered.  A movant may not simply speculate about what a

- 17 -

1  witness' testimony, but must adduce evidence to show what it would have been. *Grisby v.*

2  *Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). "[E]vidence about the testimony of a putative

3  witness must generally be presented in the form of actual testimony by the witness or on

4  affidavit. A defendant cannot simply state that the testimony would have been favorable;

5  self-serving speculation will not sustain an ineffective assistance claim." *U.S. v. Ashimi*, 932

6  F.2d 643, 650 (7th Cir. 1991).

7       Here, Movant proffers only the unattested affidavit of the purported witness Jaime

8  Cisneros Ruiz.[5]  While that statement asserts Movant's innocence, it also acknowledges the

9  witness' involvement in the conspiracy, and the presence at the drop house of not only the

10  witness, but of Movant. (Motion, Doc. 1 at Exhibit 7.) Because the witness proffers no

11  explanation for Movant's presence at the house, this witness would have been of minimal

12  assistance to Movant at trial, if not damning.

13       Movant proffers nothing to suggest what the testimony of Rigoberto Trujillo and Felix

14  Najera Escobar would have been.[6]

15       Finally, Movant acknowledges that the plea agreements entered into by the co-

16  conspirators "mentioned Ruben Plaza as an additional smuggler in the factual basis of their

17  plea agreement." (Reply, Doc. 18 at 12.) Movant attempts to dismiss this on the basis that the

18  Government drafted the agreements. (*Id.*) While counsel could also have done so, it would

19  have been a reasonable tactical decision to avoid having to do so by not calling these

20  witnesses at all.

21       In sum, Movant fails to establish that counsel performed deficiently by failing to

22

23       [5] The parties debate whether these unnotarized statements are properly authenticated.

24  Because it does not affect the outcome, the undersigned presumes, for purposes of this

25  Report & Recommendation that the statements are authentic statements of the signatories.

26       [6] Movant also produces a statement by a Favian Franco. (Motion, Doc. 1 at Exhibit

27  6.) However, Movant does not suggest in connection with his Ground 2 that counsel was
   ever advised of the existence of Mr. Franco. Further, Mr. Franco's statement offers little

28  more than a conclusory claim of innocence, suggesting nothing about Mr. Franco's
   knowledge of any particular facts.

1  interview and call these witnesses, and fails to show that prejudice resulted.  Thus, Movant

2  fails to establish that counsel was ineffective for failing to interview or call these witnesses.

3      **Failure to Communicate** - Movant argues that trial counsel failed to communicate

4  with him.  Movant argues that in the 19 months prior to trial, counsel conferred with him for

5  no more than 5 to 6 times, for no more than 10 to 15 minutes.  He asserts that he would

6  request information about his case, but it would not be provided.  And, he complains that she

7  failed to consult with him at all on one occasion after scheduling a visit, coming to the jail,

8  and then meeting with other clients.  (Motion, Doc. 1 at 6B-6C.)

9      In response, Respondent submits an Affidavit of trial counsel avowing that she

10  conferred with Movant on 23 separate occasions, including 17 times at the detention facility

11  or jail, and 6 times at the courthouse.  This was in addition to her 11 appearances in the case.

12  Respondent further argues a lack of showing of prejudice.  (Response, Doc. 16 at Exhibit.)

13      Movant replies that because of the lack of communication, he "end[ed] up in trial with

14  no defense at all."  (Reply, Doc. 18 at 10.)  Movant also complains that counsel met with him

15  "on several occasions without the assistance of a qualified interpreter."  (Reply, Doc. 18 at

16  11.)  However, trial counsel avows that "[o]n each and every occasion that I met with Mr.

17  Plaza-Zeta I used the services of a Spanish Language Speaking Interpreter."  (Response, Doc.

18  16 at Exhibit, para. 11.)  Regardless of who this Court might believe, Movant fails to show

19  that he was prejudiced.  Moreover, the undersigned notes that on at least one occasion,

20  Movant represented to the Court that he did not need the services of an interpreter. (CR Doc.

21  142, R.T. 10/6/06 at 2-3.)

22      Movant's purported prejudice is not born out by the record.  Counsel subjected the

23  witnesses to cross-examination, and argued Movant's case.  While counsel did not call any

24  witnesses in Movant's behalf, Movant has not shown any witness that would have been, on

25  the whole, of significant benefit to Movant's defense.  Moreover, Movant does not connect

26  any difficulties in communication with the actual conduct of the trial by counsel, other than

27  the failure to call witnesses who Movant has failed to show would have been beneficial.

28      "The petitioner has not suggested any defect in trial counsels' performance that was the

result of their supposed inability to communicate. Even if there was no effective communication, the petitioner has not made any showing of even the possibility of prejudice, a prerequisite for a grant of habeas based on ineffective assistance of counsel." *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

Movant seeks discovery in the form of jail visitation logs and surveillance tapes. Motion for Discovery, Doc. 3 at 3.) Given Movant's failure to establish any prejudice from any shortcomings in counsel's communication with him, discovery to establish the precise frequency and duration of counsel's visits is unnecessary.

**Death Penalty** - Movant argues that counsel attempted to coerce him into taking a plea offer by incorrectly telling him he could receive the death penalty at trial. (Motion, Doc. 1 at 6C.) Respondent dismisses this as an "outrageous claim," and asserts a lack of prejudice. (Response, Doc. 16 at 11.) Movant does not reply.

The undersigned does not find Movant's claim outrageous.[7] Movant supplies a copy of a letter in which trial counsel outlines the potential that the case could be "death eligible."[8]

And certainly, defendants are entitled to effective assistance of counsel in the plea process. *Nunes v. Mueller*, 350 F.3d 1045 (9th Cir. 2003). Nonetheless, Movant fails to establish any prejudice from such misrepresentation. The harm from such misrepresentations would have occurred had Movant accepted the plea offer, and lost his right to trial based upon the incorrect information. However, Movant did not accept the proffered plea agreements. Movant could not credibly argue that, had counsel correctly informed him that the worse possible outcome was a life sentence, he would have accepted the plea offer rather than rejecting it. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (prejudicial effect on plea negotiations determined by objective analysis "without regard for the 'idiosyncrasies of the

---

[7] Perhaps Respondent reads Movant to assert that counsel actually threatened Movant with death, as opposed to simply advising hm that he faced a death penalty. The undersigned does not understand Movant to make such a claim.

[8] It is not clear to the undersigned how counsel may have come to that conclusion. The most stringent possible sentence seemed to be life. While hostage taking does provide for a death penalty, that is only "if the death of any person results." 18 U.S.C. § 1203(a).

particular decisionmaker' ").  Accordingly, the undersigned finds that the outcome of the plea process was not affected by any impropriety in counsel's advice on the possible sentences at trial. *Cf. Nunes*, *supra* (finding prejudice where defendant rejected a plea offer when counsel related that sentence under the plea was 22 years, when actual offer was for 11 years).

Movant does argue that the misrepresentation caused him to lose confidence in trial counsel.  However, Movant does not establish that his generic loss of confidence impeded his defense at trial, simply that it clouded his judgment in considering further plea offers.  (Reply, Doc. 18 at 12-13.)   Given Movants refusal to enter into a plea agreement when he, purportedly, still believed he was facing a death penalty, Movant proffers no reason to believe that any subsequent offer would have been accepted, with or without confidence in his attorney.

**<u>Summary</u>** - Based upon the foregoing, the undersigned concludes that Movant's Ground Two fails to establish that Movant received ineffective assistance from trial counsel, and this ground for relief should be denied.  Further, the undersigned finds that neither the discovery requested by Movant nor an evidentiary hearing have been shown necessary to the resolution of this ground for relief.

## E.  GROUND THREE: INEFFECTIVE ASSISTANCE RE JURY SELECTION

For his Ground Three for relief, Movant argues that trial counsel was ineffective because she failed to object to the jury selection process.  Movant argues that the jury venire was not selected from a fair and impartial jury pool because there were no African-American or Native-American people on the jury, "and possibly, grand jury in this case." (Motion, Doc. 1 at 7.)

Respondent argues that counsel made several challenges to the jury pool pursuant to *Batson v. Kentucky*, 476 U.S. 79, 98 (1986), and Movant fails to establish prejudice from any objections to the pool. In reply, Movant simply points to the composition of the jury venire. (Reply, Doc. 18 at 13.)

It is not sufficient to establish a constitutional violation to simply point to the absence

1   of a particular group from the jury venire.   Rather, to establish a prima facie case for a

2   violation of the Sixth Amendment's fair cross-section requirement, under *Duren v. Missouri,*

3   439 U.S. 357 (1979), the defendant must show:

4               (1) that the group alleged to be excluded is a "distinctive" group in the
                community; (2) that the representation of this group in venires from
5               which juries are selected is not fair and reasonable in relation to the
                number of such persons in the community; and (3) that this under
6               representation is due to systematic exclusion of the group in the
                jury-selection process.

7   *Id.* at 364.

8        Assuming arguendo that African-Americans and Native-Americans constitute a

9   "distinctive group in the community, Movant makes no effort to establish the other two

10  components under *Duren*, and offers nothing to suggest that counsel would have been

11  successful in doing so.

12       For example, the Ninth Circuit has "settled on 'absolute disparity'-the difference

13  between the percentage of the distinctive group in the community and the percentage of that

14  group in the jury pool-as the appropriate measure of the representativeness of the jury pool."

15  *U.S. v. Rodriguez-Lara,* 421 F.3d 932, 943 -944 (9th Cir. 2005).   The U.S. Census Bureau

16  reports that in 2009, "Black persons" made up 4.4% of the population of Arizona, and

17  "American  Indian  and  Alaska  Native  persons"  made  up  4.9%.    *See*

18  http://quickfacts.census.gov/qfd/states/04000.html, last accessed 10/27/10.   For Maricopa

19  county, the numbers are 5.2% and 2.2%, respectively.   *See* http://quickfacts.census.gov/

20  qfd/states/04/04013.html, last accessed 10/27/10. Assuming the representation in Petitioner's

21  venire was 0.0%, the absolute disparity would be 4.4% and 4.9%, respectively, or 5.2% and

22  2.2.% for Maricopa County.   And yet, the Ninth Circuit has declined to find under

23  representation where there was an absolute disparity of 7.7%. *U.S. v. Rodriguez-Lara,* 421

24  F.3d at 944.

25       With respect to the grand jury, Movant offers nothing to suggest that its composition

26  did not represent a fair cross-section of the community.

27       Moreover, Movant does not even suggest how these groups may have been

28

1   systematically excluded from either the petit or grand jury.

2        Further, Movant does not suggest anything that should have alerted counsel to the need

3   to pursue these issues.  For the reasons discussed above, the mere happenstance that the

4   Movant's petit jury was not a perfect representation of the community was not sufficient to

5   support or suggest a basis for a challenged to the jury composition. Under these

6   circumstances, Movant fails to show that counsel performed deficiently by failing to pursue

7   a fair cross section challenge to the jury.

8        Based upon the foregoing, the undersigned concludes that neither discovery nor an

9   evidentiary hearing are necessary with regard to Ground Three, and that Ground Three should

10  be denied as without merit.

11

12  **F.  GROUND SIX: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

13       For his Ground Six for relief, Movant argues that appellate counsel was ineffective for

14  failing to raise a claim of insufficiency of the evidence to sustain a conviction on the firearms

15  charges.  (Motion, Doc. 1 at 8F.)  Movant argues there was no evidence of his active

16  employment of a firearm, his arrest (when the guns were seized)  was 18 months after the

17  offense, and occurred away from the scene, and the guns found at Movant's home were not

18  connected to Movant or the crime.  Movant also argues that there was no evidence of his

19  aiding and abetting the use of a firearm by others in the crime.  (Motion, Doc. 1,

20  Memorandum at 26-31.)

21       Respondent argues the claim is without merit because: (1) there was substantial

22  testimony of the use of firearms by Movant and the co-conspirators; (2) a reasonable

23  foreseeability of a co-conspirator's use of a firearm is sufficient; and (3) trial counsel's efforts

24  to dismiss on this basis were unsuccessful.  (Response, Doc. 16 at 12.)  Movant does not

25  reply.

26       This claim must be evaluated under *Strickland's* "deficient performance" and

27  "prejudice" standard discussed herein above.  Respondent argues Movant shows neither

28  because any such appeal would have been futile.

1       Movant was convicted of violating "Title 18, U.S.C. §924(c) and (2), Possession or

2   Use of a Firearm in a Crime of Violence, a Class A Felony offense, as charged in Count Five

3   of the Indictment." (CR Doc. 179, Judgment at 1.)  That provision punishes "any person who,

4   during and in relation to any crime of violence ... uses or carries a firearm, or who, in

5   furtherance of any such crime, possesses a firearm."  18 U.S.C. § 924(c)(1)(A).

6       Movant cites *Bailey v. United States*, 516 U.S. 137 (1995) for the proposition that the

7   firearm must have been actively used in the commission of the predicated offense.  However,

8   in response to the holding of *Bailey*, in 1998 Congress adopted what was colloquially known

9   as the "Baily Fix Act", which amended § 924(c) to add specific language to extend the statute

10  to one who merely "possesses a firearm" so long as it is "in furtherance" of the crime. *See*

11  *U.S. v. O'Brien*, - - - U.S.  - - - , 130 S. Ct. 216, 2179 (2010).

12      Further, as Respondent notes, it was sufficient that a co-conspirator used or possessed

13  a firearm, so long as those actions were reasonably foreseeable to Movant.  *See U.S. v.*

14  *Simmons*, 581 F.3d 582, 587 (7th Cir. 2009).

15      Trial counsel moved, along with counsel for co-defendant, to dismiss based on the lack

16  of evidence on the weapons charge.  The motion was denied.  (CR Doc. 209, R.T. 10/18/06

17  at 140-142.)  "When a defendant has moved under Federal Rule of Criminal Procedure 29(a)

18  for a judgment of acquittal on the ground that the evidence is insufficient to support the

19  verdict, [the Court of Appeals reviews] the record to determine 'whether ' any rational trier

20  of fact could have found the essential elements of the crime beyond a reasonable doubt.' ' "

21  *U.S. v. Roston,* 986 F.2d 1287, 1289 (9th Cir. 1993).  There is sufficient evidence to support

22  a conviction if, viewing the evidence in the light most favorable to the prosecution, any

23  rational trier of fact could have found the essential elements of the crime beyond a reasonable

24  doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

25      Here, viewed in a light most favorable to the prosecution, there was sufficient evidence

26  to support Movant's conviction.  The victim witness Diaz-Hernandez testified that while she

27  was being held at the house, one of the co-conspirators and Movant were in possession of

28  guns.

1
    Q  And so Mingo told to you get off the truck?
    A  Yes.

2
    Q  And did you see - - was he the one - - was Mingo the one who told
    you to inside the house, sit down, and be quiet?

3
    A  He and the one who was driving.
    Q  And at this point were either of them armed?

4
    A  Yes.
    Q  Both of them?

5
    A  No, just the one who was driving.
    Q  Is that the person you said nickname is Rojo?

6
    A  Yes.

7
(CR Doc. 145 R.T. 10/17/06 at 14.)   She testified that the smugglers threatened to kill them,

8
pointed guns at some of the smuggled aliens and hit them with guns.  (*Id.* at 16-18.)  And, she

9
testified that Movant came to the house, was armed, spoke to the other co-conspirators, and

10
moved through the house into a room where the other aliens were held and were being hit.

11
    Q  When you saw defendant Plaza-Uzeta, you were in the living room
    here?

12
    A  Yes, in the living room.
    * * *

13
    Q  And when defendant Plaza-Uzeta came into the house, was he
    armed?

14
    A  Yes.
    * * *

15
    Q  And you said that defendant Plaza-Uzeta and Rojo went to room 5.
    Did Librado go with them?

16
    A  Yes.
    Q  And could you tell what the were doing at that room?

17
    A  No, not exactly.  How can I say this?  I remember that they talked.
    They started - - and then they started hitting people.

18
    Q  What people were they hitting?
    A  The ones that were in room No. 5.

19
 (*Id.* at 34-38.)

20
      Movant seems to suppose that he must have been arrested in the course of commission

21
of the crime and caught red-handed with a gun in his hand.  The fact that he was not, and the

22
only physical evidence was the presence of handguns at his home long after, does not undo

23
the sufficiency of the witness' testimony to show his use of firearms, as well as that of the

24
other smugglers.  The presence of those guns may have added credibility to the testimony of

25
the witness, but it was not necessary to establish the elements of the crime.

26
      Consequently, appellate counsel could have made a reasonable tactical choice to not

27
assert such a claim on appeal.  Moreover, had such a claim been presented, Movant has failed

28

1   to show a reasonable probability that it would have been successful and thus have altered the

2   outcome.  Therefore the undersigned can find neither deficient performance nor prejudice, and

3   therefore concludes that Ground Six is without merit and must be denied.

4

5   **G.  SUMMARY**

6       **Motion for Discovery -** For the reasons discussed above, the undersigned concludes

7   that Movant fails to show good cause for his requested discovery.  With regard to the lost

8   letter to the trial court, he proffers no viable source for the letter.  With regard to jail visitation

9   records and surveillance tapes, he fails to show that, even if they reflected less communication

10  than asserted by trial counsel, that they would render his Ground Two viable in the face of a

11  lack of prejudice. With regard to surveillance tapes of the court's witness room, he fails to

12  show that even if they reflected the prosecutor communicating with the witness that they

13  would establish the prosecution's knowing presentation of false testimony.  With regard to

14  depositions of those witnesses, Movant can only support his request by asking the Court to

15  permit him to engage in a fishing expedition that the witnesses will reflect a solicitation of

16  perjury by the prosecutor.  With regard to affidavits of interpreters utilized by counsel to

17  establish that Movant asked counsel to call various witnesses, Petitioner's failure to show any

18  prejudice from the failure to call witnesses renders this irrelevant.  And finally, with regard

19  to the information concerning the jury selection, Movant fails to show that he would be able

20  to meet the other criteria necessary to support a fair cross section claim sufficiently to show

21  ineffective assistance of counsel.

22      Accordingly, the undersigned will deny the motion for discovery.

23      **Motion for Evidentiary Hearing -** For the reasons discussed above, the undersigned

24  concludes that Movant fails to make the showing necessary to the grant of an evidentiary

25  hearing.  With regard to each of his grounds for relief, Movant either fails to "allege specific

26  facts which, if true, would entitle him to relief," *McMullen*, 98 F.3d at 1159, or his claims can

27  be "conclusively decided on the basis of documentary testimony and evidence in the record,"

28  *Shah*, 878 F.2d, at 1159.  (9th Cir. 1989), or the claims "are so palpably incredible or patently

1  frivolous as to warrant summary dismissal," *United States v. Mejia-Mesa*, 153 F.3d 925, 931
2  (9th Cir.1998).

3      With regard to Ground 1 (Conflict with Counsel), Movant does not suggest what
4  evidence might be produced at an evidentiary hearing to support his claim.  With regard to
5  Ground 2 (Ineffective Assistance of Trial Counsel), Movant fails to make any proffer of
6  prejudice, rendering an evidentiary hearing on his claims of deficient performance irrelevant.
7  With regard to Ground 3 (Jury Selection), Movant offers nothing more than conjecture based
8  upon an absence of two people groups from the jury, a statistically insignificant disparity, and
9  suggests nothing to be produced at an evidentiary hearing - - beyond a fishing expedition - -
10 to establish the remainder of the elements of a fair cross section claim.  With regard to Ground
11 6 (Ineffective Assistance of Appellate Counsel), Movant proffers nothing to be adduced at an
12 evidentiary hearing.

13     Accordingly, the undersigned will deny the motion for an evidentiary hearing.

14     **Motion to Vacate** - For the reasons set forth above, the undersigned concludes that
15 Grounds 4 and 5 must be dismissed with prejudice as procedurally defaulted, and Grounds 1,
16 2, 3, and 6 must be denied without merit.  Recommendations will be made accordingly.

17
18                    **IV.  CERTIFICATE OF APPEALABILITY**

19     **Ruling Required** - Rule 11(a), Rules Governing Section 2255 Cases, requires that in
20 habeas cases the "district court must issue or deny a certificate of appealability when it enters
21 a final order adverse to the applicant."  Such certificates are required in cases concerning
22 detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C.
23 § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

24     Here, the Motion to Vacate is brought pursuant to 28 U.S.C. § 2255.   The
25 recommendations if accepted will result in Movant's Motion to Vacate being  resolved
26 adversely to Movant.  Accordingly, a decision on a certificate of Appealability is required.

27     **Applicable Standards** - The standard for issuing a certificate of appealability
28 ("COA") is whether the applicant has "made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's order and judgment, that decision will be in part on procedural grounds, and in part on the merits.

To the extent that Movant's claims are rejected on procedural grounds, under the reasoning set forth herein,  the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."

To the extent that Movant's claims are rejected on the merits, under the reasoning set forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Motion to Vacate,  a certificate of appealability should be denied.

# V.  ORDERS AND RECOMMENDATIONS

**IT IS THEREFORE ORDERED** that Movant's Motion for Discovery  and Expansion of the Record, filed June 8, 2009 (Doc. 3) is **DENIED**.

**IT IS FURTHER ORDERED** that Movant's Motion for Evidentiary hearing, filed December 18, 2009 (Doc. 20) is **DENIED**.

**IT IS THEREFORE RECOMMENDED** that Grounds 4 and 5 of Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed June 8, 2009 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the remainder of Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed June 8, 2009 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability be **DENIED.**

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 10, Rules Governing Section 2255 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections.   Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

DATED: November 18, 2010

_____
JAY R. IRWIN
United States Magistrate Judge

- 29 -