**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff/Respondent,<br><br>vs.<br><br>Ruben Plaza-Uzeta,<br><br>  Defendant/Movant. | No. CV-09-1231-PHX-GMS<br>CR-05-0225-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Petitioner Ruben Plaza-Uzeta's ("Plaza-Uzeta") Motion to Vacate, Set Aside or Correct Sentence (Doc. 1) pursuant to 28 U.S.C. § 2255. On November 18, 2010, Magistrate Judge Jay R. Irwin issued a Report and Recommendation ("R & R") (Doc. 22), recommending that the motion be denied. On December 3, 2010, Plaza-Uzeta filed Objections to the R & R (Doc. 23). For the reasons stated herein, the Court accepts Judge Irwin's R & R and denies Plaza-Uzeta's motion.

**BACKGROUND**

Movant was arrested in connection with a large scale alien smuggling operation. (Doc. 22). Following his arrest, he admitted to visiting the stash house and identified co-defendant Gerardo Lazaro-Ascencio aka "Rojo" and 27 alien smugglers after being shown photographs by the agent interviewing him. (Doc. 16; 22). On October 19, 2006, Plaza-Uzeta was convicted for the following: Conspiracy to Commit Hostage Taking; Hostage Taking; Conspiracy to Harbor Illegal Aliens; Harboring Illegal Aliens; and Possession or Use of a

Firearm in a Crime of Violence. (Doc. 16). Movant was sentenced to a term of life imprisonment on Counts One and Two, a term of 120 months on Counts Three and Four, a term of 84 months on Count 5, and 5 years on supervised release. (Doc. 1). On June 10, 2008, the Ninth Circuit affirmed Plaza-Uzeta's conviction and sentence, *see United States v. Plaza-Uzeta*, 282 Fed.Appx. 522 (9th Cir. 2008). (Doc. 16).

On June 8, 2009, Movant filed a pro se motion pursuant to 28 U.S.C. § 2255, which "provides 'a remedy [in the sentencing court] exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined.'" *United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010) (quoting *Hill v. United States*, 368 U.S. 424, 427 (1962)). A motion brought under § 2255 "may only be used to collaterally attack a conviction and sentence 'upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States.'" *Id.* (quoting 28 U.S.C. § 2255). Movant asserts he was denied effective assistance of counsel. (Doc. 1). He also asserts that his Fifth and Fourteenth Amendment rights were violated when the government permitted one of its witnesses to commit perjury and that his Fifth and Sixth Amendment rights were violated when he was denied the assistance of a qualified interpreter.

## DISCUSSION

Federal district courts "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].'" *United States v. Reyna-Tapia*, 328 F.3d 1114, 1119 (9th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)); *Carrillo-Lozano v. Stolc*, 669 F.Supp.2d 1074, 1076 (D. Ariz. 2009). Under § 636(b)(1) a "district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *Reyna-Tapia*, 328 F.3d at 1121.

**I. Procedural Default**

Generally "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). However, an exception to this rule exists when a criminal defendant raises a claim of ineffective assistance

- 2 -

of counsel. *Id.* (petitioner may raise an ineffective-assistance-of-counsel claim in a § 2255 proceeding "whether or not the petitioner could have raised the claim on direct appeal").

## II. Denial of Effective Assistance of Counsel (Ground one)

Movant objects to the R & R's recommendation that the claim be dismissed for failure to put the trial court on notice that an irreconcilable conflict had arisen between Plaza-Uzeta and his trial counsel. (Doc. 23). He asserts that he alerted the trial court in a letter dated September 9, 2006, about four weeks before trial, that there was an irreconcilable conflict. The letter now cannot be located.[1] The next day, defense counsel filed a formal motion, however the motion did not specify the reasons for the request of substitution of counsel. (Doc. 22). On September 15, 2006, the trial court denied the request, stating that "[n]either the Motion nor the defendant's letter has presented an appropriate basis for granting of said Motion." (Doc. 1, Ex. 5(2); Doc. 16). The trial court did not make any inquiry into Plaza-Uzeta's complaint before issuing the order.

A few days after the motion was denied, Plaza-Uzeta had his counsel file a motion to proceed pro per. (Doc. 1, Ex. 5(2); Doc. 22). Shortly thereafter, the trial court held a hearing on defendant's motion to represent himself. (Doc. 22). Movant objects to the R & R's reliance on the Ninth Circuit's ruling that he had multiple opportunities to state his basis for his request for substitution of counsel, but failed to do so. Movant concedes that at the hearing he did not elaborate on his reasons for his request, but argues that his motion for appointment of new counsel had already been denied, so he could not be expected to assert

---

[1] Plaza-Uzeta requests that the Court hold an evidentiary hearing to determine whether or not he put the trial court on notice of a conflict between Movant and his trial counsel. (Doc. 23). Under 28 U.S.C. § 2255(b), the Court must grant a request for evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." Plaza-Uzeta has also filed an affidavit with the Court in which he describes the contents of the lost letter. (Doc. 19). Because the Court assumes that the letter contained the statements that Movant includes in his affidavit, the Court need not hold a hearing to determine the contents of the letter.

those reasons again and no additional reasons existed. (Doc. 23).[2] Movant further concedes that, "although there's very little evidence of irreconcilable conflict between petitioner and its counsel", the court should nevertheless grant relief. (*Id.*).[3] Finally, Movant asserts that at the time of the hearing on his motion to proceed pro per, he had no headphones and therefore could not fully understand the translation.

As noted in the R & R, this issue was raised on direct appeal to the Ninth Circuit. That court stated that the district court should have made a better record and inquired into the circumstances that prompted Plaza-Uzeta to request appointment of new counsel. *Plaza-Uzeta*, 282 Fed.Appx. at 523. Nevertheless, the court determined that reversal was not warranted because Plaza-Uzeta had not established the basis for the purported conflict, even on appeal. *Id.* As noted above, the court also highlighted the fact that Plaza-Uzeta had the opportunity to state his basis for the request–presumably either in the letter or later during the hearing on his motion to proceed pro se–but did not do so. *Id.* The court concluded that "[a]bsent any evidence that the defendant made some claim of [irreconcilable] conflict, we cannot conclude that the district court was required to conduct any further inquiry." *Id.* at 524. The court did clarify that "[b]ecause Plaza's claim that substitute counsel should have been appointed for him appears to require gathering evidence beyond the existing record," Plaza-Uzeta could renew his claim on collateral review. *Id.*

"The Sixth Amendment does not guarantee a 'meaningful relationship' between a client and his attorney." *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007) (quoting

---

[2] In addition, Plaza-Uzeta claims that he did not raise issues regarding the "irreconcilable conflict" with his attorney during the hearing because his motion to proceed pro se, which was filed less than a week after his motion for substitution of counsel was denied, was for a "total [sic] different issue." (Doc. 23). At the same time, he contends that it never occurred to him that he would need to restate his complaints because he believed that his letter and motion regarding the substitution of counsel were already in the record.

[3] Movant also concedes that, even now, he has failed to "relate any circumstances which would evidence that an irreconcilable conflict actually existed at the time of his motion hearing regarding Pro Per status", but argues that, nevertheless, the trial court should have inquired into the extent of the conflict. (Doc. 23).

1 *Morris v. Slappy*, 461 U.S. 1, 14 (1983)). However, if a conflict between a defendant and his
2 counsel rises to the level of "irreconcilable", forcing the defendant to go to trial with that
3 counsel may constitute a "constructive denial of the Sixth Amendment right to counsel." *Id.*
4 The district court's denial of a motion for substitution of counsel is reviewed for abuse of
5 discretion. *United States v. Schaff*, 948 F.2d 501, 503 (9th Cir. 1991). When reviewing a
6 denial of a motion to substitute counsel, three factors are considered: (1) the adequacy of the
7 district court's inquiry; (2) the extent of any conflict; and (3) the timeliness of the motion.
8 *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 777 (9th Cir. 2001); *see also Stenson*, 504
9 F.3d at 886 (a court must consider these three factors in determining whether a conflict rises
10 to the level of "irreconcilable").

11 Timeliness is not an issue in this case. Movant sent his letter and request
12 approximately four weeks before the trial was set to begin. *See Adelzo-Gonzalez*, 268 F.3d
13 at 780 (noting that a motion for substitution of counsel filed six weeks in advance of trial was
14 timely, and the fact that the last motion was made only one day before trial did not
15 necessarily make it untimely). Moreover, the district court did not indicate that timeliness
16 was a factor in its denial of Plaza-Uzeta's motion.

17 In this case, it is uncontested that the district court did not inquire into Plaza-Uzeta's
18 complaint and request for substitution of counsel. Plaza-Uzeta contends that although he has
19 presented "very little evidence of irreconcilable conflict", the Court should grant relief
20 simply because of the district court's failure to inquire into the situation. (Doc. 23). However,
21 the Ninth Circuit considered this fact on direct appeal and nevertheless concluded that the
22 lack of inquiry did not per se establish a Sixth Amendment violation. 282 Fed.Appx. at 523;
23 *see also United States v. Smith*, 282 F.3d 758, 764 (9th Cir. 2002) (stating that, although the
24 circuit's case law "favors an inquiry when a party seeks substitute counsel", under certain
25 circumstances, "the failure to conduct a hearing is not *by itself* an abuse of discretion"
26 (internal citations omitted)); *United States v. McClendon*, 782 F.2d 785, 789 (9th Cir. 1986).
27 The only new evidence before this Court related to this issue is Movant's own affidavit, in
28 which he states that his letter informed the trial judge that there was a lack of communication

1   with his counsel and that he believed his counsel was not considering his best interests.[4]
2   (Doc. 19). Movant does not claim that he identified any specific circumstances or concerns
3   in his letter.

4   Even considering Movant's affidavit, the trial court was only generally put on notice
5   of some conflict between the defendant and counsel. In addressing this issue on direct appeal,
6   the Ninth Circuit mentioned several observations from the record. It noted that the "conflict,
7   if any, does not appear to have been 'so great that it resulted in a total lack of communication
8   preventing an adequate defense.'" *Plaza-Uzeta*, 282 Fed.Appx. at 523 (quoting *United States
9   v. Mills*, 597 F.2d 693, 700 (9th Cir. 1979)). Specifically it noted that "Plaza and his counsel
10  conferred and communicated throughout the proceedings", and "Plaza later decided to
11  rescind his *Faretta* waiver and re-accept his attorney as counsel of record . . . ." *Id.* (internal
12  citation omitted).[5] Taking these points into consideration, the district court's decision not to
13  inquire further into Movant's complaint did not necessarily constitute an abuse of discretion.
14  *See McClendon*, 782 F.2d at 789 (explaining that, if the "[defendant's] description of the
15  problem and the judge's own observations provide[] a sufficient basis for reaching an
16  informed decision", then the trial court's "failure to conduct a formal inquiry [is] not fatal
17  error").

18  The final factor before this Court is whether there is evidence that the conflict was
19  irreconcilable. An irreconcilable conflict "occurs only where there is a complete breakdown
20  in communication between the attorney and client, and the breakdown prevents effective
21  assistance of counsel." *Stenson*, 504 F.3d at 886; *see Smith*, 282 F.3d at 765 (considering
22  fact that defense counsel's work was not ineffective and district court's observations of
23  normal communications between defendant and counsel); *McClendon*, 782 F.2d at 789

---

[4] In his Objections, Movant states that his request for substitution of counsel was based on "lack of communication and dissatisfaction with counsel performance." (Doc. 23).

[5] Movant also concedes that after he filed his motion to proceed pro se just days after his motion for substitution of counsel was denied, the trial judge held a hearing on the matter, during which he did not raise any specific concerns about defense counsel.

- 6 -

1  (considering fact that record did not reveal "lack of communication" between defendant and
2  counsel, but rather showed that "counsel was vigorous and well prepared in his argument").
3  As the Ninth Circuit noted, there is not much evidence of the extent of the conflict between
4  Movant and his trial counsel. In fact, as noted above, Movant argues that relief should be
5  granted, "although there's very little evidence of irreconcilable conflict between petitioner
6  and its counsel." (Doc. 23).

7  Movant now asserts in his Objections to the R & R that several factors justified
8  substitution of counsel. First, he refers to a letter sent to him by defense counsel, indicating
9  that the charges filed may make him death eligible. (*Id.*). Movant contends that once he
10 discovered that the maximum possible sentence was life imprisonment, he no longer trusted
11 his attorney. Second, he asserts that counsel visited him on several occasions without a
12 qualified interpreter. Movant does not allege that he alerted the district court to these issues
13 at the time he requested a substitution of counsel or during the hearing on his motion to
14 proceed pro per.

15 Neither of these claims establishes an irreconcilable conflict between Movant and
16 defense counsel. It is clear from the record that in November 2005, defense counsel sent
17 Plaza-Uzeta a letter, in which she indicated that he was facing a "'life' sentence or a 'death'
18 eligible sentence." (Doc. 1, Ex. 4(C)). As the R & R noted, the "most stringent possible
19 sentence seemed to be life." (Doc. 22). It is unclear when exactly Movant discovered that he
20 could not be sentenced to death,[6] but, in any event, Movant asserts that defense counsel
21 informed him of this fact before he sent the letter to the district court requesting a substitution
22 of counsel. (Doc. 23). Although Movant claims that this incident created an irreconcilable

---

[6] On page 4 of Movant's Objection to the R & R, he states the following: "the first plea offer [] was made a day or two before the letter requesting change of counsel was sent to the trial court, and *after counsel told petitioner that he was not facing death sentence*." However, on page 7, Movant states "*after the first plea bargain was rejected* trial counsel reveled [sic] to petitioner that he was not facing death sentence, this revelation made petitioner very upset and thus he lost all trust, confident [sic] and communication with counsel."

- 7 -

1  conflict and caused him to lose faith in his attorney, the record seems to demonstrate that
2  after his request was denied, defense counsel negotiated with the government to get Plaza-
3  Uzeta a better plea offer of seven to fifteen years. (Doc. 22; 05-CR-225, Doc. 142). In fact,
4  at the October 6, 2006 hearing on Plaza-Uzeta's motion to proceed pro se, defense counsel
5  made a record of the plea offer, stating the following:

> [Plaza] had proposed some changes to that offer, and the Government conceded to those changes, and those changes were to the factual basis that would eliminate the number of aliens involved, [resulting in a] four point deduction [based on the] number of aliens involved, and they removed the phrase that would place him in a role of leadership, thereby reducing him further . . . for calculation purposes. The Government conceded those two requests, and thereafter Mr. Uzeta still rejected the seven to 15 year range.

10  (05-CR-225, Doc. 142). Plaza-Uzeta did not challenge defense counsel's recitation of the
11  facts. This description of events, which occurred after the denial of his motion for
12  substitution of counsel, demonstrates that defense counsel was advocating vigorously for her
13  client to get him a good plea offer, and that she was working closely with Plaza-Uzeta to
14  ensure that he was comfortable with the terms of the offer. Plaza-Uzeta appears to have
15  conveyed his concerns to defense counsel, who then addressed those concerns with
16  government counsel. Although Plaza-Uzeta's discovery that he was not in fact facing the
17  death penalty certainly could have put a strain on his relationship with defense counsel,
18  Plaza-Uzeta has failed to demonstrate that this incident led to a complete breakdown in
19  communication.

20        Plaza-Uzeta raises the interpreter issue to support both this claim as well as his claim
21  of ineffective assistance of trial counsel. (Doc. 23). Movant asserts that defense counsel
22  visited him several times at the beginning of October 2006 without a qualified interpreter.
23  Plaza-Uzeta's trial counsel has filed an affidavit in which she avows that she never met with
24  her client without a qualified interpreter. (Doc. 17, Ex. 1). To the extent that Movant relies
25  on these alleged incidents to support his claim that there was a total breakdown of
26  communication at the time he submitted his letter to the district judge, his claim fails because
27  these incidents took place a number of weeks after the letter and motion were filed. He also
28  asserts that on one occasion, defense counsel was visiting her clients, but left before speaking

with Movant. (Doc. 23). He claims that this is a "clear sign of total breakdown in communication." (*Id.*). Even assuming that defense counsel for whatever reason forgot to meet with Plaza-Uzeta on one occasion, this incident alone does not establish a total breakdown in communication. Because Movant has failed to set forth facts that would support a finding of an irreconcilable conflict, the Court denies relief.

### III. Ineffective Assistance of Trial Counsel (Ground two)[7]

Movant objects on two grounds to Judge Irwin's conclusions regarding his ineffective assistance of trial counsel claim. (Doc. 23). First, he asserts that trial counsel failed to investigate certain defenses, including interviewing several witnesses proposed by Movant, who would have presented testimony favorable to him. Second, he contends that trial counsel met with him and discussed matters important to his trial on several occasions without the assistance of a qualified interpreter. Movant asserts that this occurred at key moments, including when defense counsel met with him to discuss a plea offer with a range of seven to fifteen years. He now claims that he was prejudiced by defense counsel's conduct because had he fully understood the terms of this offer, he would have considered entering into a plea. He also claims that had he known that defense counsel did not plan to call any witnesses in his defense, he would never have gone to trial.

Pursuant to the Sixth Amendment of the United States Constitution, a criminal defendant has a right to "effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). *Strickland* requires the defendant to show that (1) his counsel's performance was deficient to the point that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment and (2) that the deficient performance prejudiced the defense. *Id.* at 687. To be deficient, defense counsel's conduct must have fallen below an "objective standard of reasonableness." *Id.* at 687–88. To be prejudicial, a defendant must show that any mistakes made by defense counsel created a

---

[7] Because Movant did not object to the magistrate judge's conclusion that an evidentiary hearing was not necessary to address this ground, the Court need not address that issue.

- 9 -

1   "reasonable probability that, but for [the] unprofessional errors, the result of the proceeding
2   would have been different." *Id.* at 694. Counsel's performance is strongly presumed to "fall[]
3   within the wide range of reasonable professional assistance" unless Movant can show
4   otherwise. *Id.* at 689; *see also United States v. Fredman*, 390 F.3d 1154, 1156 (9th Cir.
5   2004).

6   Movant asserts that his trial counsel failed to interview or call as witnesses four
7   individuals who Movant claims would have provided favorable testimony. (Doc. 23). He
8   objects to Judge Irwin's determination that Movant failed to establish either of the *Strickland*
9   elements because he has not set forth any evidence of what Rigoberto Trujillo or Felix Najera
10  Escobar would have testified to. Movant simply states that they could not be located, but had
11  they testified truthfully, they would have provided favorable testimony. As Judge Irwin
12  noted in the R & R, counsel's failure to investigate a meritorious defense may constitute
13  ineffective assistance of counsel if the defendant can show that the error "prejudiced" him.
14  (Doc. 22 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985))). Assuming that Plaza-Uzeta
15  provided defense counsel with the names of these witnesses, he still must establish prejudice.
16  As Judge Irwin correctly noted, "[s]peculation about what [a witness] could have said is not
17  enough to establish prejudice." *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997)). Thus,
18  Movant has not established prejudice as to any failure on the part of defense counsel to
19  consider these two potential witnesses.

20  Movant also asserts that he provided defense counsel with the name of Jaime Cisneros
21  Ruiz. (Doc. 1).[8] He objects to Judge Irwin's conclusion that defense counsel may have made

---

[8] As the R & R noted, Movant attached a document that appears to be an unnotarized affidavit of Fabian Franco, a potential witness who allegedly would have provided favorable testimony. (Doc. 1, Ex. 5). However, Movant did not assert in his § 2255 motion that he mentioned this potential witness to defense counsel. Movant cannot establish a deficiency on defense counsel's part if his counsel was not aware of this potential witness. Morever, the affidavit does not describe any specific facts or testimony that Mr. Franco would have offered in Movant's defense. The affidavit simply states that Plaza-Uzeta "is not involved in any manner in the crime that was committed between January 25 and 28 at the recidence [sic] located at 6221 North 27 Dr. Phoenix AZ." (*Id.*).

1  a tactical decision not to call Mr. Ruiz as a witness because Movant was named as an
2  additional smuggler in Mr. Ruiz's plea agreement, a fact which Movant conceded in his
3  Reply. (Doc. 18). Movant contends that Judge Irwin's conclusion must be rejected as mere
4  speculation. (Doc. 23).

5  Movant has failed to show that defense counsel's performance fell below an
6  "objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. The Court reiterates
7  that there is a "strong presumption that counsel's conduct [fell] within the wide range of
8  reasonable professional assistance." *Fredman*, 390 F.3d at 1156. As Judge Irwin noted, Mr.
9  Cisneros' affidavit acknowledges that Movant accompanied Mr. Franco, a person involved
10 in the conspiracy of which Movant was convicted, on a visit to the drop house. (Doc. 1, Ex.
11 5 (7)). This statement, combined with those in Mr. Cisneros' plea agreement, identifying
12 Movant as a smuggler, suggest that Mr. Cisneros' testimony could have damaged Movant's
13 case, as much if not more than it could have helped his case. Thus, even if defense counsel's
14 decision not to interview Mr. Cisneros as a potential witness constituted a deficient
15 performance, Movant has not established that the failure to call Mr. Cisneros as a witness
16 caused him any prejudice in light of the facts that likely would have come out during Mr.
17 Cisneros' testimony.

18 Movant also asserts an ineffective assistance of counsel claim based on his defense
19 attorney's alleged failure to communicate with him. In the R & R, Judge Irwin recommended
20 a denial of relief because Movant has failed to establish that he was prejudiced by any failure
21 to communicate. (Doc. 22). The R & R acknowledged that defense counsel did not call any
22 witnesses on Movant's behalf, but noted that Movant has failed to show "any witness that
23 would have been, on the whole, of significant benefit to Movant's defense." (*Id.*). The R &
24 R also noted that Movant was unable to establish that any failure to communicate negatively
25 impacted his counsel's performance at trial. Movant now asserts that had there have been
26 better communication with defense counsel, he would have understood that she did not plan
27 to call any witnesses, and therefore, would have given more thought to the plea offer with
28 a seven to fifteen year range. (Doc. 23). He asserts that, although defense counsel met with

him to discuss the conditions of this plea offer on three occasions, she did not bring a qualified interpreter with her, and thus, Movant was unable to fully understand the offer. He also asserts that at the beginning of trial and during the course of trial, counsel spoke with Movant several times, to keep him informed, but these communications took place without the assistance of an interpreter. Movant requests that the Court obtain surveillance tapes from several dates in October 2006 to establish that defense counsel met with him without an interpreter.[9]

As noted earlier, Movant's trial counsel filed an affidavit, in which she avowed that she met with Movant on more than twenty occasions, in addition to court appearances. (Doc. 16, Ex. 1). She also avowed that she never visited Plaza-Uzeta without a Spanish language interpreter. Movant asserts that trial counsel met with him on the following dates without a qualified interpreter: October 2, 2006, October 3, 2006, and October 4, 2006. According to the record, these appear to be the meetings leading up to the settlement conference, scheduled on October 4, 2006, during which Movant and trial counsel likely would have discussed the second plea offer of seven to fifteen years. (Doc. 17; 05-cr-225, Doc. 79; Doc. 82–83). The hearing on Movant's motion to proceed pro se took place just two days later, on October 6, 2006. However, Movant concedes that he never raised any issues about lack of communication or lack of assistance of a qualified interpreter during this hearing. Furthermore, the record shows, and the R & R mentions, that one interpreter stated during the October 6, 2006 hearing that she attended the settlement conference that had just taken place, and "the defendant did not require the services of an interpreter. He assured Judge Anderson that he understood everything and we did not interpret for him, and at the end of the hearing Judge Anderson again asked him if he had understood everything, and he said

---

[9] Rule 6 of the rules governing § 2255 allows the Court, "for good cause", to authorize a party to conduct discovery. Movant requests various surveillance tapes from meetings that took place in October 2006. (Doc. 19). The Court is skeptical that these tapes still exist after almost six years. Furthermore, there is sufficient evidence before the Court to conclude that Movant cannot meet his burden of establishing a deficient performance and prejudice. Therefore, the Court denies Movant's request for discovery.

- 12 -

yes." (05-cr-225, Doc. 142). Taking into consideration this evidence in the record, together with defense counsel's affidavit, the Court concludes that Movant has not established that defense counsel's performance was "outside the wide range of professionally competent assistance" or that he was prejudiced by his attorney's performance. *Strickland*, 466 U.S. at 690.

### III. Other Claims (Grounds four and five)

Plaza-Uzeta raised in his petition two additional claims: (1) that his Fifth and Fourteenth Amendment rights were violated when the government allowed a key witness to testify untruthfully, and (2) that his Fifth and Sixth Amendment rights were violated when he was deprived of assistance of a qualified interpreter. Neither of these claims was presented on direct appeal. (Doc. 5, Ex. A). As a result, Judge Irwin determined that Petitioner's claims were procedurally defaulted. (Doc. 22 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998))). In his objection to the R & R, Petitioner does not contest this determination, but rather asserts that he has established cause resulting from ineffective assistance of appellate counsel and prejudice because "had appellate counsel presented these grounds on direct appeal there is a reasonable possibility that it woulded [sic] have succeed [sic]." (Doc. 23). Petitioner does not specifically address the prejudice stemming from the violation of his right to assistance of a qualified interpreter. He simply states that "[t]here's no doubt that government's witnesses lie several times . . . [and] [g]overnment may not allow a witness to give false testimony." (*Id.*). Further, Petitioner does not object to Judge Irwin's determination that Petitioner has not met his burden of presenting evidence to establish his actual innocence.

As noted in the R & R, ineffective assistance of appellate counsel may constitute cause but only if it "amounts to an independent constitutional violation." *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998). In cases involving a federal habeas corpus petition filed pursuant to 28 U.S.C. § 2254, the Ninth Circuit has stated that "[t]o constitute cause for procedural default of a federal habeas claim, the constitutional claim of ineffective assistance of counsel must first have been presented to the state courts as an independent claim."

1  *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003). The Court noted above that a criminal
2  defendant may raise for the first time an ineffective assistance of counsel claim in a § 2255
3  proceeding. However, Plaza-Uzeta did not raise an independent claim of ineffective
4  assistance of appellate counsel related to these claims in his Motion to Vacate, but rather
5  raised it to establish cause in his Reply to the Motion to Vacate. (Doc. 18).[10] Accordingly,
6  appellate counsel's performance cannot constitute cause. *See Cockett*, 333 F.3d at 943.
7  Because Movant has not otherwise established cause, the Court need not address his claim
8  of prejudice. Movant's default is not excused, and therefore, the Court will not review these
9  two claims.

**IT IS THEREFORE ORDERED:**

1. Magistrate Judge Irwin's R & R (Doc. 22) is **ACCEPTED.**

2. Movant's Motion to Vacate (Doc. 1) is **DENIED.**

3. The Clerk of the Court shall **TERMINATE** this action.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[10] In his Motion to Vacate, Movant raised an ineffective assistance of counsel claim based on appellate counsel's failure to raise a claim of insufficiency of the evidence to sustain his conviction on firearms charges. (Doc. 1). Movant did not object to the magistrate judge's conclusion that this claim was without merit, and in any event, the basis of that ineffective assistance of counsel claim is irrelevant to the claims raised in grounds four and five.

- 14 -

1          4.     The docket shall reflect that the Court certifies, pursuant to 28 U.S.C.
2  § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this
3  decision would not be taken in good faith.

4          DATED this 30th day of June, 2011.

*/s/ G. Murray Snow*
G. Murray Snow
United States District Judge